Sero Refng v. National Union Fire Insurance Company, and we hear first from Mr. Schatz. Good morning, Your Honors. Benjamin Schatz of Manette, Phelps & Phillips for Appellant to Soro. Because this is an insurance coverage dispute under Texas law, the controlling legal principle is that as long as the insured can provide a reasonable interpretation of the policy, then that policy interpretation must govern, and any ambiguity is resolved in favor of the insured. Why is it reasonable to say that a theft provision should cover conduct that has nothing to do with theft? Because the language of the policy says so. There are two sentences of that theft provision, and the second sentence is, for purposes of this coverage, theft, a specially defined term, shall also include forgery. Without disclaiming the definition of theft at the back of the policy, which, consistent with the common understanding of theft, involves an unlawful taking. That's correct. The term theft is defined on the last page of the policy as an unlawful taking, but on the first page in the coverage provision, the language that says theft shall also include forgery expands that definition. And we've cited numerous cases where an insurance policy uses the word include, and that expands the meaning of a defined term. But includes can also just be an example, and isn't there a reason why the example of forgery is given? Because the very next provision covers forgery with commercial paper, a very specialized provision. Normally, there's a principle that, well, the specific would govern over the general, so there might be an argument without that theft can also include forgery provision that, well, the only forgery is that covered by Part 2. So there was a need to explain forgery can also fall within theft, but it should still be theft. The coverage under A2, as you pointed out, is a very different sort of coverage, and it doesn't apply to employees, and it only applies to specific types of documents, which are not at issue in this case. And the fact that it might have been logical to organize the policy in such a way as to say, well, any coverage for forgery must be under this particular provision might have been a logical way of drafting the policy, but it's not how this policy was drafted. This policy's language inserts the word forgery into the theft coverage provision. So your position is that forgery having nothing to do with theft is covered under the theft provision? That's correct. It's not our position. Let me give you a hypothetical. An employee or a candidate applies for a job, submits some letters of reference, great letters. You hire him. He turns out to be the worst employee, clearly not qualified. He causes all kinds of losses to the company because he doesn't know what he's doing. So someone says, boy, how did these people who referred him think he was so great? They call him up, and those people said, I don't know anything about this. Those are forged letters. Would that be coverable because he forged his references, the losses he caused by being a bad employee? At the time of the forgery, it doesn't sound like he was an employee under that circumstance. Well, let's change the hypo. It's an employee who's trying to get a promotion, and so the letters of reference are forged during his employment to get a higher position in the company. Yeah, but the policy says that it shall cover losses resulting directly from an employee's theft, and theft shall include forgery. So if it fits under that scenario, then the insurance company has to cover it. Now, maybe in your hypothetical you can argue that there are other elements lacking. Maybe there isn't a loss that results directly from. But on the plain language, and we look at this analysis from the interpretation of a reasonable insured, would look at the English sentence, theft shall also include forgery, and think, okay, I have coverage for employee forgery because the policy says so. Let me ask you this. You say that A-2 only covers non-employees forgery? It doesn't cover employees? That's correct. The way this. You can't get there just based on the language in A-2, though, can you? Because it doesn't mention either employees or non-employees. That's correct. The exclusion is policy section D-1C, and D-1C says that this policy doesn't cover anything that an employee does except under policy coverage A-1. And so there is the logic of this policy is that it segregates acts by employees and puts that all into A-1, and acts by non-employees are the other seven forms of coverage. Now, that may not be the way that you or I might draft this insurance policy if we were to do it from scratch, but that's the language that's in the policy, and the insurance company has to live with that. And if you adhere to the definition of theft at the end of the policy only, then you've really robbed that second sentence in A-1 coverage of any meaning whatsoever. Because to say that a covered theft, a forgery is covered if it results in a theft doesn't add anything, because the theft coverage already. I mean, policy statutes often provide illustrations. I mean, there's quite a bit of case law that says including can just mean a list of illustrations that's not exhaustive. That's true, and that may be one interpretation. But if the policy is ambiguous, then you have to interpret it in favor of the insured. And the word include absolutely is used to expand definitions. In fact, it's used in this policy. What authority do you have? Theft is in quotations, and that usually means it's a defined term. Correct. What authority do you have? Because your position basically says even though it's in quotations, we don't look at the definition at the end when it comes to forgery. Can you cite any case that says that? Actually, we're not distancing ourselves from the definition at the end of the policy. That absolutely applies. That always applies. However, for purposes under coverage A-1, you also get coverage for theft. The word include is used to expand a definition. It's used that way in this very policy. At record page 107, endorsement 11 to the policy says that the definition of employee is amended to include volunteers. That's an addition, and there are many instances in this policy and in the cases that we cite where the word include is used in a definitional way to expand the meaning of a term. And this language doesn't just say include. It says shall also include, and the ordinary meaning of the word also is to add something. And so you have two words that add something. Something's got to be added here. That is a reasonable interpretation, and in fact, it's so reasonable that early in this litigation, National Union adopted that language itself. They only changed tactics later to propose this other alternative. Is this a standard form policy? It is. Is there any case law? I gather you didn't find anything specifically on this. Not quite on this point, but if you look at the history, if you run a search for case law involving theft or forgery, you'll find that historically there were policies that covered theft or forgery, and the or forgery got dropped. And then this language got put back in. Theft shall also include forgery. And so perhaps that's an explanation for how this language came about, but there really isn't any need to look at the extrinsic evidence of the development of the policy. Is that going to allow for forgery policies, just stand-alone forgery policies? I'm not aware of any such, of an only forgery policy. This is a commercial crime policy, and it covers certain acts by employees, and then it covers many things not by employees. Provision 2 does cover certain types of forgery. That's correct. That's a very narrow form of coverage. Doesn't the fact that there's other policies that say we cover theft or forgery, I mean, that makes clear that it's just forgery divorced from any notion of taking of property. Doesn't that show how a policy should express itself if it's going to cover both theft and forgery that has nothing to do with theft? Well, that's historical. I'm not sure if there are still coverage forms that use both terms. There very well may be, and I think that's probably a typical insurance company's defense is, well, we had a different policy that would actually cover the red car and the bulldog in the road. But, you know, they have to live with the language that's in this policy. And if it's a reasonable interpretation to cover employee forgery, and it is, then that needs to govern. And if, in fact, there is an alternative reasonable explanation for this language, that's okay. But summary judgment still has to be reversed because Tesoro need only show a reasonable interpretation of the policy. And the language theft shall also include forgery on its face would seem to indicate that forgery is being imported into the policy under the definition of theft. That special definition is being expanded just for this coverage. The word theft is used throughout the policy in many of the other coverages. It's only for coverage A1 that forgery is added to that definition and is covered. And it's not helpful to say, well, we put that in there as a clarification. Because you might have been confused because there's other coverage that uses the word forgery but is excluded for employees. Because there are other things in the policy that fall into that same category. There's safe burglary and there's robbery, and those only apply to non-employees. But don't you think they would be covered by theft coverage? I mean, if that language was meant to be illustrative and exemplary and to tie the policy pieces together, then it should have said theft shall also include a theft accomplished by a forgery or a safe burglary or a robbery or some of the other things that we cover for non-employees. But that language just isn't there. It's forgery alone. And so that, again, makes it seem very clear that there's something new and different that's being appended to this definition and for very good reason. With all these different provisions, like you said, there's theft, forgery, computer fraud, burglaries. If they meant to include forgery having nothing to do with theft, why would they include it within the theft provision? Why not just add another separate provision since there are already so many? To segregate the difference between employee misconduct and non-employee misconduct, it seems as if the drafter of this policy wanted to make sure that anything related to an employee only goes in to A1 because exclusion D1C excludes employees from everything else in the policy. It's a logical way of structuring it. It may not be the most reasonable way or the most logical, but it makes sense. And our interpretation holds the policy together. It doesn't render anything inharmonious or superfluous. And the alternative view really raises the question, well, what does theft shall also include forgery mean? And if you say, well, it's just illustrative, that's not substantive. That's not of significance. And so suddenly you have a coverage policy that's only two sentences, and now one of the sentences is meaningless because it's already subsumed in the first one. That's not a reasonable interpretation and certainly not a fair interpretation to an insured. If, however, that approach prevails and the shall include language is actually meaningless, what that means is that Tesoro needs to show an unlawful taking under Texas law. Forgery is out of the picture, but Tesoro can do that. In a commercial crime policy governed by Texas law, it would be reasonable for an insured to conclude that an unlawful taking would be anything that the Texas Penal Code's theft statute says is unlawful. And that's enough. And Tesoro can demonstrate an unlawful taking under Texas law because there was a transfer of its property. Over which this employee exercised control. So even under that alternative definition, there is enough to... How did your employee exercise control over... He was the director of credit. He was the top guy in charge of this. He oversaw the Enmax account. And he was the one that authorized the credit for this customer to take this fuel. And control, again under Texas definition, is simply the ability to influence. He didn't have to be the employee that turned the spigot. But as long as his actions led to that result, then he influenced the transfer of the property that was lost. He'd have to... I guess to be convicted of a crime, he'd have to intend that the company lose that oil that he extended credit for, right? That's true, although intent is not a factor under the insurance policy. Well, but you said it would be a crime under Texas law if that's the way you get to an unlawful taking. Right. Well, we get there using the Texas theft statute that defines consent in that consent is not effective if it's induced by deception. And that deception is creating a false impression that would affect another's judgment. And that's what he did as the director of credit overseeing this account. Just out of curiosity, was there any criminal investigation? I mean, it actually seems like a classic commercial bribery case. There were extensive investigations, however, by quite a number of federal agencies. But there were no charges eventually ever brought. I suppose it conceivably still could happen, but that has not happened. But a conviction is not necessary. Charges are not necessary under the policy. Let me ask you if Judge Davis will indulge me. If we were to agree with you on the meaning of A1, theft includes forgery, interpret it in the way you do, what else do we need to decide in this case? I mean, is causation yet in front of us? Is any other issue on the policy in front of us? Not necessarily. The trial court did not address causation. It's an alternative ground raised by the insurance company. So you have the ability . . . Let's say he was wrong, Judge Ezra was wrong on his interpretation of this language, which we may not, but if we were to do that, does the case go back with no other decision by this court? It might be helpful for this court to address the causation arguments, but it need not. The causation arguments are actually rather weak, and I would address them, but I . . . No. Let's not go that far. Okay. Thank you. Thank you, sir. Any other questions? Okay. Mr. Coffin. Thank you, Your Honor. May it please the Court, Shannon Coffin for National Union. Judge Costa, I want to start with where you started in this case, to address the reason for this provision. Keep your voice up. I'm sorry, Your Honor. To address the reason for this provision, this including sentence. As you have noted, and I think you're correct, it exists to allay the confusion created by A2. This is a policy that specifically addresses forgery in a very narrow way. It's only forgery of notes drawn on the company. And then it says employees are entirely excluded from that coverage. Right. And . . . How about A2 now? A2 now. Yes, sir. And that leads to the question, well, what if forgery is part of a scheme of theft? Would it be covered under the theft provision? And that sentence, the sentence that we have all focused on in this case, is designed to address that very issue. That's the reason the particular language is used. Shall also include is somewhat of a strange formulation, but it says shall also include because there is a concern. If you look at the face of the policy without that sentence, there is a concern about whether any forgery by an employee would be covered, even if it leads to or is part of theft. That's the entire purpose of that. Now, what the plaintiffs can't answer here, Your Honor, and related to that, is under their interpretation, what is so special about forgery? The policy as a general rule under D1C . . . Sorry. It's like reading a statute. The policy under D1C specifically excludes all employee dishonesty. Well, what is it that's so special about forgery? Except what's covered by A1. But what is it that's so special about forgery that says that forgery would be covered freestanding regardless of theft? There's nothing. If in this scheme, assuming for sake of argument, this is disputed because Calvin Lovell has disputed that he did any of this, but put that aside. Let's just assume Calvin Lovell did everything that you could infer or that he has been accused of here. If he didn't ever write a name on a piece of paper, if instead the auditor came to him and said, are we covered on this particular account? And he said, yep, we got a $12 million letter of credit. But he never went to the computer and signed that letter of credit. Well, this policy would exclude that unless it related to theft. There's nothing different about forgery. It's simply an act of employee dishonesty. So this policy covers employee forgery only when it's part of the broader act of theft. And we get there, Your Honor, through all of the rules of statutory interpretation, I'm sorry, contractual interpretation, which of course are the same, that you're all familiar with in every case. The biggest rule here is context. You don't isolate a single word, a single sentence from context. Context has two different applications here. First, the context of the particular clause A-1. A-1 is titled employee theft. And the operative term in the law sentence in A-1 is employee theft. Theft is in quotation marks. Theft is defined. Theft is defined as the unlawful taking to the deprivation of the insured. The quotation mark on theft may just mean to point out that it is a defined term and this is an expansion of that definition. Well, Your Honor, there's two different words in play here. If you look at what the definition is at the end of the policy in Section F, it says theft means this. Then it says in this provision theft shall also include this. Well, it's different language. What the plaintiffs are trying to do is say theft shall also mean this. But the case law is very plain. The Supreme Court has talked about this a lot. The case law is very plain that the word including is not simply a word of expansion. It can be either one. It can be either one, but context is key, right? Context is key. And when the Supreme Court says something that a particular policy covers unexpected events, including floods, the context of that indicates that a flood is not always an unexpected event, but there's coverage when the unexpected event is a flood, when the flood itself is unexpected. The Tenth Circuit said it in one of the cases where we cite its little colorful language and it says when a doctor says your diet shall not include fried foods or shall not have fried foods in it and this includes meat and potatoes, that doesn't mean— It would be more logical for them to say for the purposes of this ensuring agreement, forgery shall also, or theft shall also include forgery by theft. Well, Your Honor, but the very fact that the policy uses quotations in that sentence, as the district court properly said, if you plug the definition into that sentence, for purposes of this ensuring agreement, an unlawful taking to the deprivation of the insured shall also include forgery, it's there. I mean, theft by forgery is part of that sentence. We're not adding words. It's the natural reading of that sentence. And the context—so we talked about context within that particular provision. Context obviously is important when read with respect to the next provision. And what plaintiffs are saying is that this is the specific controlling the general. There's a specific provision titled forgery in this policy. It's entitled forgery. It's narrow, right? It doesn't cover all forgeries. Even non-employee forgeries aren't all covered. And then there's another provision. Judge Davis, you're right. A2 does not address employee versus non-employee. It's only by operation of a general exclusion in the policy. That general exclusion, however, takes out of that entirely any employee forgery. So what they're saying is a policy covers a narrow class of forgery, excludes all employee forgery, but then backdoors all employee forgery in a policy provision entitled employee theft. We submit that doesn't make a lot of sense. But doesn't it make sense? It's one thing to say that non-employee forgery has the A2 limit, but obviously employees have been treated differently. We've got the D1C exclusion. We have the A1 that is the limit of employee coverage, actions by employees, coverage for theirs. And so it seems to me that your analysis creates a somewhat different problem. Forgery is not a defined term, but forgery is under A2 greatly limited from what the general understanding of forgery would be. Is your argument that chef shall also include forgery and the very next word in the policy is the start of A2? This were actually theft by forgery. Would the argument also be that since it's not depends on the facts of the forgery, it doesn't fit the definition of A2. It's not covered under A1 even if it's a theft. I lost you right at the end. Well, is forgery as you interpret it under A1 only the kind of forgery covered by A2? Well, forgery is not a defined term. Your explanation is because of A2 or maybe more as Judge Costa is offering, I don't know if you've accepted it, because of A2 it makes particular sense to include forgery to show we if theft was actually caused by forgery, we're going to cover that. So my sense of it is that if you're relying on A2 as the explanation for why A1 needs to be written that way in reference to forgery, then you may be incorporating the definition of forgery under A2, the limitations under A2. You've hit on this, the fact that forgery is not in quotes in A1 is a bit of a strange animal, I have to admit. And I'm not sure what definition, it's not clear to me what definition of forgery you would apply except the forgery, because you commonly understand forgery to mean exactly what the policy says it means. It's important to me that if you can't tie it to A2, then generally it would not be tried, but it seems to me it would be general forgery. And so any act of general forgery would be covered by A2. Your limitation is potentially that it must be in some way covered by the definition of theft under A20. Well, there are two limitations in A2. First, employees are out. Second, Out only because of D1C. Out because of D1C. But within A2, the limitation of forgery there is it's only notes and instruments drawn on Tesoro that are covered. Now, look, that's very relevant here, because even with respect to general forgery, as you've called it, this policy doesn't cover everything. This policy doesn't cover notes and the like that Tesoro may be a victim of but aren't drawn on Tesoro. So that actually reinforces our argument. This policy has a provision that specifically addresses forgery and isn't universal. It's pretty narrow. To answer your question, I understand your position that the theft provision, first of all, includes employees, so employee forgery is covered. Second of all, it doesn't have those limitations about commercial papers, so it's a broader form of forgery. But you still think it still has to have the theft. But it still has to be tied to theft. It's broader than the very limit. But it is broader for employees as long as it's part of a theft. The coverage for theft by an employee of Tesoro's property is universal. It covers everything. And so as long as there is a theft, the employee's activity in undertaking forgery is covered, just as long as it's covered by theft. Look, the second principle that comes into play that's related to context is the obligation to harmonize. This court has an obligation to harmonize the language. The problem with the plaintiff's interpretation here is that it does nothing to harmonize theft and forgery. Theft and forgery can be harmonized, as we have suggested. What the plaintiff has suggested is theft shall mean something that has nothing to do with the unlawful taking of property in this instance. We're suggesting that you do have an obligation to harmonize these two terms, and our interpretation does harmonize these two terms. What are you trying to harmonize? Harmonize the meaning of theft and forgery. Theft and forgery can be, especially because it's an including clause, and as you say, Your Honor, including could be illustrative, and it could be additional. But in this case, it makes a great deal more sense to say it's illustrative because these two terms can be harmonized. Why would you pick out forgery to cite as a sole example? Well, because of the problem that's created by A2. Say again? Because of the problem that's created by A2. That's why. That's exactly why. Everything here flows from the interrelationship between A1 and A2. A2 just creates some confusion about whether forgery is covered. Counsel for the other side suggested that, well, robbery and burglary, safe burglary are covered, but both of those naturally include and are defined to include unlawful takings. They're theft. You understand those to be theft. Forgery can be part of a theft, or it could be what we have here in this case, which has nothing to do with theft. Counsel, there are eight different categories that we're looking at under, not looking at, but they're under A, and you say forgery is different than inside the premises robbery or safe burglary. I mean, it seems to me that you're making this word for, you're making A2 do an awful lot of work for you. There are several categories of other coverages, computer fraud, fund transfers fraud, money orders and counterfeit money. All of those may raise issues in the same way if an employee's theft was somewhat different than one of those others, is it still covered? It seems to me the more natural or potentially ambiguous and therefore possible reading is that forgery just means forgery. You're trying to force it into a definition of theft that is not really explained in that last sentence of A1, but you're just saying, let's use A2 to explain it all. And if it explains it all, then that also gets back to my point earlier that A1 forgery arguably must be limited to the A2 definition. And so when you say includes forgery, you're incorporating the A2 and say if employees do that, at least there will be coverage for that, which is an awful lot of work again for your argument. This just seems to me to be an ambiguous phrase for all the reasons that maybe I have ambiguously tried to explain just now. Your Honor, it is the natural interrelationship between... What about the other sections, A3, 4, 5, 6, 7, 8? As I said, those provisions when they relate to employees, safe burglary and the like, are provisions that already relate to takings. Well, that's the easy one. There are others besides safe burglary and the like, but you're saying all of those would fit under the normal definition of theft, only forgery is a problem. Yes, forgery has this ambiguity. Forgery has the ambiguity in this sense, right? I'm not suggesting it's ambiguous in the sense the plaintiffs are suggesting, but forgery has this point that it can be read freestanding, right, or it can be read to relate to theft. And our point is that you, this Court, have an obligation to harmonize those two provisions, and you can harmonize them. Look, if you look at the plaintiff's reply brief at page 20, they give several examples, and they say, this ticket entitles you to see circus animals, including lions and elephants, right? Well, if you read that provision, you're naturally going to read lions to be lions at the circus, not lions in the Serengeti. You can harmonize those provisions. You wouldn't read that provision to say, I'm going to see a lion in Africa because I have a ticket. No, you would read that provision to say, I'm going to the circus, I'm going to see a circus lion. That's our point, that lion there, freestanding, standing alone, could mean a lot of different lions. But in this context, because you have an obligation to harmonize that particular sentence, you would believe that those lions would be circus lions. And it's the same point here. Theft, when harmonized because of the word including, which, as the Supreme Court says, can very well be a subset of the word that precedes the including, but theft can be harmonized with the word that follows the including. And if you harmonize it, you get to a natural, unambiguous reading of this provision. Let me ask you, do you agree that when you read the exclusion, D1C, with A2, the acts of employees are only covered under A1? Well, that's right. So, A2 on its face doesn't make a distinction. I know, but when you read it with D1C, then A2 covers acts of non-employees. Then A2 covers acts of non-employees. That's right. So, I mean, if you accept that that's the way they structured the policy, then aren't you just left with whether the second sentence in A1 was meant to be an example, or whether it was meant to change the definition of theft, to expand the definition? We see expansions of definitions all the time. Your Honor, if A1 was entitled employee bad acts, I think you could get there. A1 is entitled employee theft, and A1 addresses in its insuring clause employee theft. So, A1 is directed at employee theft. It's not an employee bad acts provision. That's what plaintiffs want to make it. It is not an employee bad acts provision. It doesn't cover fraud, right? And there's nothing, again, plaintiffs can't answer this fundamental question, what is so different about forgery that requires it to be freestanding covered under an employee theft provision, without regard to theft, that that would be covered, whereas the very same acts that are alleged here, without the signing of a name, that that would not be covered. Well, I mean, does he have to explain why the insurer would want to expand the coverage, or if this policy would cover forgery? Well, on the face of this policy, yes, because there's a very natural reading of this policy. Your reading is unreasonable. I can't understand why it's unreasonable to read the second sentence as expanding. Because it disregards every rule of construction that's out there. It disregards the rule of reading in context, and it disregards the specific controlling the general, and it disregards the obligation, more importantly, it disregards the obligation to harmonize the language of the policy. Your Honor, I think, I mean, I think that's the focal point of this argument. I'll be happy to answer any other questions you have, but if not, I'm happy to rest. All right, thank you very much. Thank you. Okay, Mr. Schatz, back to you. Your Honor, we just heard a concession that this is a very strange formulation of language, and that the word include could be used illustratively or definitionally. And if that's true, and it's ambiguous, then the interpretation that favors the insured has to be the one that controls. And the insurance company can redraft this policy to make it mean what they're saying it means now, which is theft shall also include theft by forgery. If they want to insert that language, they can do that in another policy, but they can't insert that language into this policy. There's one thing you say it's ambiguous, and that district judge said it was not. I think you, at times, want us to go the other way and say it's not ambiguous favoring you. It seems to me, though, that your interpretation must be reasonable. There must be an ambiguity that would lead to at least a reasonable interpretation that would support you. You've already been down that road. I'm not asking you to repeat it. This form, there's something in the briefing about the ISO form being created and some of the explanations that went with it. Is it your understanding, your briefing talks about 2005, that this potential change from former language of theft or forgery, that the current language, at least under this form, dates from around that time, 2005? I think so. I don't know. There's one about case law. There's not any case law on this particular issue, so that might be one explanation that is relatively recent. You point to the language, and it's responsive language from the National Union. The purpose of this insuring agreement, this is ISO's explanation, the purpose of this agreement is to cover all employee acts that result in covered loss, including forgery losses caused by employees. That is, to me, in itself, ambiguous. Why do you say it clearly means what you want us to interpret this to mean? It's a plain language interpretation. I mean, run this by four out of five people you know, and they're going to say theft, a specially defined term, shall also include forgery. It's very reasonable to think that that is an expansion of the definition. And on the form history, I'd be very cautious about that because you can only use that sort of extrinsic evidence to help you interpret the policy if the policy is ambiguous. And, of course, if the policy is ambiguous, then it has to be construed in favor of de Soro. That's a reasonable interpretation, and that's what I'm worried with right now and why I'm looking at some of the... Well, it was reasonable enough for National Union to adopt it itself without denying the coverage. Then they realized it was unreasonable. I'm sorry? Then they must have realized it was unreasonable. Yes, apparently. But, you know, if you have a policy that says it covers theft, and then it says theft shall also include forgery, and you have the word include, which can be used to expand a definition, you have the word also, which adds something. Getting back to this question of what's reasonable, opposing counsel's question of what would be the reason to cover forgery unmoored from any connection with the taking or traditional notions of theft when just lying, fraud, and other things wouldn't have that coverage? It sells insurance policies, Your Honor. I mean, imagine that the salesman peddling these policies. Oh, we've got employee theft coverage, and theft shall also include forgery. The listener is going to think, okay, I'm covered. That should also include fraud. The more things you're going to say, if that's the argument. Well, but every word they put into that coverage provision. But why pick forgery as the one? Because historically, these policies were sold as theft or forgery policies. And I think the or forgery somewhere along the line probably dropped off, and then everyone said, wait, what happened to my forgery coverage? Everybody thought we had theft or forgery. Doesn't that history, that the word forgery means two different things, any forgery, any theft. So what meaning can be given to that change in policy language other than saying, now forgery is within theft, it's not a separate freestanding concept? The word forgery is right there. I think it's in the coverage provision. Why change the language from what was in it before, theft or forgery? Well, they say it's to clarify. The insurance company wants to clarify that it's led to this fight over what the definition of theft is. Why do insurance companies constantly change language in the policy? So that they can keep coming up with new arguments that they can get out of coverage. They can limit the policy. Would forgery be the most common claim about dishonest acts by employees? Would that be the thing that an employer would be concerned about? Perhaps not. It's hard to say. Knowing experiences of secretaries and law firms, I think maybe that might be what it is. You know, I would direct the court to look at the Farmer's Enterprises case that we cited, the case about garage operations policy. And in that case, it was found to cover an automobile accident, and the insurance company said, oh, what about the contacts? We're only covering garage operations. And the court said, well, but you've defined garage operations to include something that doesn't look like it's a garage operation. And that's what's happened here. The theft has been defined to include forgery. Thank you. Thank you, counsel. Very good argument by both sides. We appreciate the argument. That completes the docket for the day and for the week.